(160 App. Div. 280)

McVICKER v. JOLINE et al.

(Supreme Court, Appellate Division, First Department. January 23, 1914.)

1. STREET RAILROADS (§ 114*)—INJURIES TO PERSONS ON TRACK—CONTRIBU-
TORY NEGLIGENCE.

Where the driver of a milk wagon drove diagonally across the street
at an angle of about 45 degrees behind an east-bound car, and upon the
west-bound track, without looking for a west-bound car or taking any
precaution for his safety further than to hold out his hand as he was
going upon the track, a finding that he was free from contributory neg-
ligence was unsupported by and against the weight of the evidence.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 239-250;
Dec. Dig. § 114.*]

2. STREET RAILROADS (§ 118*)—ACTIONS FOR INJURIES—INSTRUCTIONS.

In an action for the death of the driver of a milk wagon struck by a
street car, where the evidence showed that he drove diagonally across
the street in a northwesterly direction behind an east-bound car, and
in front of a west-bound car, without looking to see whether a car was
approaching, an instruction that where the driver of a wagon, desiring
to cross a street car track, approached the track at such a distance from
an approaching car that he had reasonable ground to suppose he might
cross in safety, it was the duty of the car driver to afford him a reason-
able opportunity to do so, although he might be obliged to check the
speed of the car or stop it, and that the driver of the wagon might prop-
erly assume that the car driver would perform his duty, was improper,
since the driver of the wagon could not have had a reasonable ground
to suppose that he could cross in safety, as a supposition without knowl-
edge or observation could not be based on a reasonable ground.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 258-
269; Dec. Dig. § 118.*]

3. STREET RAILROADS (§ 118*)—ACTIONS FOR INJURIES—INSTRUCTIONS.

In an action for the death of the driver of a milk wagon who crossed
the street diagonally at an angle of about 45 degrees behind an east-bound
car and was struck by a west-bound car, an instruction that if he failed
to look for a west-bound car from the time he left the curb until he en-
tered upon the track in front of the car to find for defendant was im-
properly refused.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 258-
269; Dec. Dig. § 118.*]

4. APPEAL AND ERROR (§ 1066*)—ACTIONS FOR INJURIES—INSTRUCTIONS.

Where the positive evidence showed that the driver of a milk wagon
struck by a street car did not look for an approaching car, an instruc-
tion that from the evidence the street was open and free; that it was a
fine day, and from his failure to see the car the jury might assume that
he did look and could not see it—was prejudicial error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4220;
Dec. Dig. § 1066.*]

Appeal from Trial Term, New York County.

Action by Mary McVicker, as executrix, against Adrian H. Joline
and another, as receivers of the Metropolitan Street Railway Company,
to recover for the death of plaintiff's testator, alleged to have been
caused by the negligence of defendants. From a judgment on a ver-
dict for plaintiff for $8,345.97, and an order denying a new trial, de-
fendants appeal. Reversed and new trial ordered.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGH-LIN, CLARKE, and SCOTT, JJ.

Masten & Nichols, of New York City (Bayard H. Ames, of New York City, of counsel, Walter Henry Wood, of New York City, on the brief), for appellants.
Daniel J. Early, of New York City, for respondent.

CLARKE, J. [1] Plaintiff's decedent, 58 years old, was in the milk business. On July 24, 1911, at 6:30 a. m., he and his son John, a young man of 18, were engaged in the delivery of milk on Fourteenth street between Eighth and Ninth avenues. James McVicker was sitting in the milk wagon in front of the Rectory of St. Bernard's Church on the south side of Fourteenth street, about the middle of said block. The horse was headed to the west, towards Ninth avenue. Young McVicker had served a customer a few doors from the rectory. He testified that as he came out of the areaway he did not see anything in sight; he walked down to the wagon, put the basket in, looked up Fourteenth street, and said to his father, "It's all right; go ahead." The wagon was driven towards the west, and then turned northwest at an angle of about 45 degrees, behind an east-bound car, across the west-bound track. It had almost crossed the track when a west-bound car hit the left hind wheel and upset the wagon; James McVicker being killed as a result of the collision. The car was stopped within five feet. The father did not look up the street towards Eighth avenue at all from the time he started from the south curb until the collision. The boy says that he looked when he heard the bell when the car was 10 or 12 feet from the wagon; that he saw the motorman doing his best to stop the car, but that he could not do it. There is no evidence that McVicker made any effort to increase the speed of his horse. This accident took place in the middle of the block, and was due to the fact that the decedent undertook to drive across the track in front of an approaching car, without taking any precautions for his own safety further than to hold out his hand as he was going on the track. A finding that he was free from contributory negligence is unsupported by and against the weight of the evidence.

[2] The court at plaintiff's request charged:

"Where the driver of a wagon, desiring to cross a street car track, approaches the track at such a distance from the approaching car that he has reasonable ground to suppose that he may cross in safety, it is the duty of the car driver to afford him a reasonable opportunity to do so, although the car driver may be obliged to check the speed of his car, or to stop it, and the driver of the wagon may properly assume that the car driver will perform his duty."

This proposition in slightly different form, but with substantial similarity, was charged three times. To this the defendant excepted. The plaintiff states that said charge was proper, and that it was taken from the opinion in Lawson v. Metropolitan Street Railway Co., 40 App. Div. 307, 57 N. Y. Supp. 997. The paragraph, extracted bodily from that opinion, was not a charge to the jury, but was incidental to the discussion as applied to the facts of that case. It was an erroneous instruction as applied to the facts of this case, because it implied

that the person attempting to cross the street, before an approaching car, had a reasonable ground to suppose that he would be able to cross in safety. As the evidence establishes that from the time the milk wagon left the south curb, first driving west and then swinging in a northwesterly direction across the street, neither the decedent nor his son had looked to see whether any car was approaching from the east until the boy looked out, as he said, "just before it hit us, when I looked around and heard the bell," the decedent could not have had a reasonable ground to suppose that he could cross in safety because he had refrained from acquainting himself with the situation. A supposition without knowledge or observation could not be based on a reasonable ground.

In Baxter v. Auburn & Syracuse Electric Railroad Co., 190 N. Y. 439, 83 N. E. 469, Judge Gray writing the unanimous opinion of the court said:

"I think that the evidence permitted the jury to infer that the car was moving at an excessive rate of speed, and we may assume that the motorman was negligent in operating his car. The deceased, however, does not appear to have looked again in the direction from which a car might be expected, after he started with his horses to cross the track. * * * There was an interval of time, and he had to proceed at least 35 feet from the tree to the point of crossing and, short as was the distance to cover, he had no right to act in exclusive reliance upon the fact that no car had been in sight when he stood under the tree. A street surface railway track may not be as much a place of danger as is a steam railway track; but nevertheless its presence in the street admonishes a person to be reasonably vigilant when attempting to cross. It behooved the deceased, before going upon it, to use his senses and to look and to listen. He was to decide if it was reasonably prudent at the moment to cross it. The omission to look would only be excusable in a situation where that precaution was shown by the circumstances to have been an unavailing one. However excessive the speed of the car, it is plain that, had the deceased looked again, after leaving the sidewalk, he would have seen it, and might have awaited its passage. It was culpable negligence, as a matter of law, in my opinion, for him to drive across the track, between street crossings as he was, without looking to see if a car was approaching, at a point where it could have been seen for several hundred feet. That was the evidence, and I think it showed an inexcusable neglect on the part of the deceased, which contributed directly to his injury, as a proximate cause thereof."

[3, 4] The defendant asked the court to charge that if they found the plaintiff's intestate failed to look for a west-bound car from the time he left the curb until he entered upon the track in front of the car, the verdict must be for the defendant, which was refused and exception taken. He also asked the court to charge that it is the uncontradicted testimony and the evidence in the case that he did not look.

The Court: "I refuse to charge that, because they assume that he did look. There is some evidence here that the street was open and free, that it was a fine day, and from his failure to see the car, they might assume that he did look and could not see it."

Defendant's Counsel: "I except to the refusal to charge, and also to the modification."

Under the Baxter Case, supra, the defendant was entitled to have the request charged.

In view of the positive evidence that the decedent did not look, the court's instruction to the jury that they might assume that he did look was prejudicial error.

The judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.